Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW CATTERLIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, SUROJIT CHATTERJEE, PAUL GREWAL, ALESIA HAAS, MARC ANDREESSEN, FREDERICK ERNEST EHRSAM III, KATHRYN HAUN, KELLY KRAMER, GOKUL RAJARAM, FRED WILSON, AH CAPITAL, LLC, PARADIGM FUND LP, RIBBIT MANAGEMENT COMPANY, LLC, TIGER GLOBAL MANAGEMENT, LLC, UNION SQUARE VENTURES, LLC, and VISERION INVESTMENT PTE LTD,<br><br>Defendants. | Case no.:<br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Catterlin, individually and on behalf of all others similarly situated, by and through Plaintiff's counsel, allege the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes review and analysis of regulatory filings made by Coinbase Global, Inc., ticker symbol COIN ("Coinbase") with

- 1 -

the United States Securities and Exchange Commission ("SEC"), review and analysis of press releases and media reports issued by and disseminated by Coinbase, and review of other publicly available information concerning Coinbase.

## JURISDICTION AND VENUE

1.      The claims asserted herein arise under Sections 11, 12, and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2), and 77o, respectively).

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities of 1933 (15 U.S.C. § 77v) and because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Coinbase is a cryptocurrency exchange that does not have a principal executive office because it is a "remote-first" company and for the "vast majority of roles, employees have the option to work remotely."  *See* ¶14.

4.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## FACTUAL BACKGROUND

5.      This is a class action on behalf of all persons and entities that purchased or otherwise acquired Coinbase Class A common stock pursuant to Coinbase's registration statements and prospectus filed with the SEC for the sale of up to 114,850,769 shares of its Class A common stock

pursuant to Coinbase's initial public offering ("IPO") of stock on April 14, 2021.[1]  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

6.     In its filed registration statements, Coinbase claims that it is building a "fair, accessible, efficient, and transparent financial system for the internet age that leverages crypto assets," and that its "trusted platform" has enabled "anyone with an internet connection to easily and securely invest in and use crypto assets."[2]  Coinbase represents that its platform serves "43 million retail users, 7,000 institutions, and 115,000 ecosystem partners in over 100 countries" and that its platform are "safe, trusted, and easy-to-use," "built on top of a robust security infrastructure," and boasts "a state of the art marketplace with a deep pool of liquidity for transacting in crypto assets."[3]  Coinbase further claims to have "built a robust backend technology platform to support the global, real-time, and 24/7/265 demands of crypto asset markets" and "invests heavily in regulatory compliance."[4]

7.     Coinbase launched its IPO on April 14, 2020 and filed its prospectus on SEC Form 424B4.[5]  The filings indicated that Coinbase registered for the resale of up to 114,850,769 shares of its Class A common stock by its registered stockholders.[6]  Unlike a traditional IPO, the sale of Coinbase's stock by its registered stockholders was not underwritten by an investment bank, and its registered stockholders had the latitude to determine the amount of stock they wished to sell at prevailing market prices made through brokerage transactions on the Nasdaq Global Select Market ("NASDAQ").[7]  The prospectus further indicates that Coinbase had cash and cash equivalents of $1.1 billion, exclusive of restricted cash and customer custodial funds and would not receive any proceeds

---

[1] Coinbase Global, Inc., Registration Statement (Form S-1) (February 25, 2021); Coinbase Global, Inc. Form 424(b)(4) (April 14, 2021).
[2] Coinbase Global, Inc., Registration Statement (Form S-1).
[3] *Id.*
[4] *Id.*
[5] Coinbase Global, Inc. Form 424(b)(4) (April 14, 2021).
[6] *Id.*
[7] *Id.*

CLASS ACTION COMPLAINT

of stock sold pursuant to the registered stockholders in this IPO since its liquidity and capital resources was financed primarily from operating activities and net proceeds from the sale of convertible preferred stock.[8]

8.      Within one month of Coinbase's glowing representations of its "trusted platform" and financial condition, Coinbase's platform suffered downtimes and delays due to technical issues arising from "network congestion" thus affecting transactions on the platform.[9]  Furthermore, within a similar timeframe, Coinbase announced that it was selling $1.25 billion of convertible senior notes to raise cash, a decision that could potentially have a dilutive effect on stockholders.[10]

9.      From May 17, 2021, when Coinbase disclosed that it was raising cash through the sale of convertible bonds, to May 19, 2021, when Coinbase acknowledged technical difficulties in their platform, its stock price fell by $23.44 to close at $224.80, a loss of about 10%, in just two trading days.  For context of the significant nature of the decline, Coinbase's stock opened at $381 on the day of its IPO on April 14, 2021.

10.      Coinbase's filings with the SEC were false and misleading, and failed to disclose material adverse facts about the Coinbase's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) Coinbase's platform had fundamental weaknesses that caused it to be susceptible to network disruptions; (2) Coinbase had cashflow issues and required a substantial cash infusion; and (3) as a result of the foregoing, Defendant's glowing statements about the Company's business, operations, and prospections were materially misleading and/or lacked a reasonable basis.

---

[8] *Id.*
[9] http://web.archive.org/web/20210519155224/https://status.coinbase.com/
[10] Coinbase Global, Inc., Form 8-K (May 17, 2021).

CLASS ACTION COMPLAINT

11.     Because of Defendants' wrongful material acts, representations, and omissions, and the rapid loss of Coinbase's stock value, Plaintiff and other Class members similarly situated suffered significant losses and damages.

## **PARTIES**

### **A.     Plaintiff**

12.     Matthew Catterlin, as set forth in his accompanying certification, incorporated by reference herein, purchased Coinbase Common Class A stock during the class period pursuant and/or traceable to the Registration statements issued in connection with Coinbase's IPO, and suffered damages as a result of violations of federal securities laws due to false and/or misleading statements and/or material omissions alleged herein.

### **B.     Individual Defendants**

13.     Defendant Coinbase is a cryptocurrency exchange that offers a platform for the trading of digital currencies and assets. Coinbase is a Delaware corporation and has its common stock listed on the NASDAQ under the ticker symbol "COIN." Coinbase does not have a principal executive office and does not maintain a headquarters because it is a "remote-first" company, "meaning that for the vast majority of roles, [its] employees have the option to work remotely."[11]

14.     Defendant Brian Armstrong ("Armstrong") is, and was at the time of the IPO, Coinbase's Chief Executive Officer and Chairman of the Board of Directors. Armstrong co-founded Coinbase, is a registered stockholder who owned 9.4% or 2,735,924 of Coinbase's Class A common stock at the time of the IPO, and is a central figure in Coinbase, participating in the review, approval, and making of the statements in the registration materials, including signing of the materials.[12] Additionally, Armstrong participated in the preparation and dissemination of investor education

---

[11] Coinbase Global, Inc., Registration Statement (Form S-1) (February 25, 2021).
[12] Coinbase Global, Inc. Form 424(b)(4) (April 14, 2021).

CLASS ACTION COMPLAINT

resources, meetings, and presentations. He personally participated in the making of false and misleading presentations during the Coinbase's investor relation presentations and was financially motivated to take Coinbase public.

15.     Defendant Surojit Chatterjee ("Chatterjee") is, and was at the time of the IPO, Coinbase's Chief Product Officer, is a registered stockholder who owned 7% or 2,002,036 of Coinbase's Class A common stock at the time of the IPO and was financially motivated to take Coinbase public.[13]

16.     Defendant Paul Grewal ("Grewal") is, and was as the time of the IPO, Coinbase's Chief Legal Officer, is a registered stockholder who owned 3.3% or 915,331 of Coinbase's Class A common stock at the time of the IPO and was financially motivated to take Coinbase public.[14]

17.     Defendant Alesia Haas ("Haas") is, and was at the time of the IPO, Coinbase's Chief Financial Officer. Haas is and was responsible for Coinbase's financial management strategy, which includes overseeing global operations, finance, accounting, corporate strategy, treasury, tax, investor relations, business analytics, and information technology. She is a central figure in Coinbase, participating in the review, approval, and making of statements in the registration materials, including signing of those materials. Additionally, Haas participated in the preparation and dissemination of investor education resources, meetings, and presentations. She personally participated in the making of false and misleading presentations during Coinbase's investor relation presentations and was financially motivated to take Coinbase public and was financially motivated to take Coinbase public.

18.     Defendant Marc Andreessen ("Andreessen") is, and was at the time of the IPO, Coinbase's board director, is a registered stockholder of Coinbase's Class A common stock at the time of the IPO and is the co-founder and general partner of Defendant AH Capital, LLC, doing

---

[13] *Id.*
[14] *Id.*

CLASS ACTION COMPLAINT

business as Andreessen Horowitz ("AH Capital"), a venture capital firm in Silicon Valley, California. Andreessen and the AH entities associated with Andreessen and AH Capital beneficially owned 20.4% or 5,516,037 of Coinbase's Class A common stock at the time of the IPO and were financially motivated to take Coinbase public.[15] In his role as director, Andreessen signed or authorized Coinbase's registration materials.

19.     Defendant Frederick Ernest Ehrsam III ("Ehrsam") is, and was at the time of the IPO, Coinbase's board director, is a co-founder of Coinbase, is a registered stockholder of Coinbase's Class A common stock at the time of the IPO and is the co-founder and managing partner of Defendant Paradigm Fund GP LLC ("Paradigm"), an investment firm that invests in crypto companies and assets. Ehrsam and entities associated with Ehrsam and Paradigm beneficially owned 9.7% or 2,570,459 of Coinbase's Class A common stock at the time of the IPO and were financially motivated to take Coinbase public.[16] In his role as director, Ehrsam signed or authorized Coinbase's registration materials.

20.     Defendant Kathryn Haun ("Haun") is, and was at the time of the IPO, Coinbase's board director, is a registered stockholder who beneficially owned 181,000 of Coinbase's Class A common stock at the time of the IPO.[17] Haun also serves as a general partner of Defendant AH Capital. Haun signed or authorized the signing of Coinbase's registration materials and was financially motivated to take Coinbase public.

21.     Defendant Kelly Kramer ("Kramer") is, and was at the time of the IPO, Coinbase's board director.[18] Kramer signed or authorized the signing of Coinbase's registration materials and was financially motivated to take Coinbase public.

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

22.     Defendant Gokul Rajaram ("Rajaram") is, and was at the time of the IPO, Coinbase's board director.[19] Rajaram signed or authorized the signing of Coinbase's registration materials and was financially motivated to take Coinbase public.

23.     Defendant Fred Wilson ("Wilson") is, and was at the time of the IPO, Coinbase's board director.[20] Wilson is a registered stockholder of Coinbase's Class B common stock at the time of the IPO and is the co-founder and partner of Defendant Union Square Ventures ("Union Square"), a New York venture capital firm.[21] Wilson and Union Square collectively owned 13,902,234 or 8.2% of Coinbase's Class B common stock at the time of the IPO and was financially motivated to take Coinbase public.[22]

24.     Defendants Armstrong, Haas, Jones, Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson are collectively referred to herein as the "Individual Defendants" The Individual Defendants signed or authorized the signing of Coinbase's registration materials and ran the Company as corporate executives and/or directors who oversaw Coinbase's business operations, finances, and SEC disclosures. The Individual Defendants had knowledge of the fundamental aspects of Coinbase's financial and business operations, had access to material non-public information, knew of adverse facts that were not disclosed and concealed such adverse facts from the public through glowing reports which were false and/or misleading, and made or authorized the making of materially false and misleading statements in the registration materials. The Individual Defendants due to their positions in Coinbase, had the power and authority to control the contents of Coinbase's disclosures, financial reports, investor prospectuses, presentations to individual and institutional investors, press releases, road shows, and other events. The Individual Defendants for reasons stated in ¶¶18-22 in this

---

[19] *Id.*
[20] *Id.*
[21] https://www.usv.com/people/fred-wilson/
[22] Coinbase Global, Inc. Form 424(b)(4) (April 14, 2021).

CLASS ACTION COMPLAINT

complaint violated federal securities laws by authorizing the filing of false and/or misleading registration materials.

## C.     Institutional Defendants

25.     Defendant AH Capital, LLC, doing business as AH Capital, is a venture capital firm in Silicon Valley, California. AH Capital and affiliated entities beneficially owned 20.4% or 5,516,037 of Coinbase's Class A Common Stock at the time of the IPO.[23] AH Capital had a vested interest and was financially motivated in taking Coinbase public.

26.     Defendant Paradigm, is a venture capital firm in Silicon Valley, California. Paradigm and affiliated entities beneficially owned 9.7% or 2,570,459 of Coinbase's Class A common stock at the time of the IPO, and beneficially owned more than 5% of Coinbase's outstanding stock.[24] Paradigm had a vested interest and was financially motivated to take Coinbase public.

27.     Defendant Ribbit Management Company, LLC. ("Ribbit"), is a venture capital firm in Silicon Valley, California. Ribbit and affiliated entities beneficially owned 7% or 11,995,949 of Coinbase's Class B common stock at the time of the IPO, and beneficially owned more than 5% of Coinbase's outstanding stock.[25] Ribbit had a vested interest and was financially motivated to take Coinbase public.

28.     Defendant Tiger Global Private Investment Partners XI, L.P. an affiliate of Tiger Global Management, LLC ("Tiger Global"), is a venture capital and investment firm in New York City, New York. Tiger Global and affiliated entities beneficially owned 9.9% or 2,624,880 of Coinbase's Class A common stock at the time of the IPO, and beneficially owned more than 5% of

---

[23] *Id.*
[24] *Id.*
[25] *Id.*

Coinbase's outstanding stock.[26] Tiger Global had a vested interest and was financially motivated to take Coinbase public.

29.     Defendant Union Square Ventures, LLC, a venture capital firm in New York, New York, together with its affiliates ("Union Square"), beneficially owned 8.2% or 13,902,324 of Coinbase's Class B common stock at the time of the IPO, and beneficially owned more than 5% of Coinbase's outstanding stock.[27] Union Square had a vested interest and was financially motivated to take Coinbase public.

30.     Defendant Viserion Investment Pte Ltd. ("Viserion") is a private investment company in Singapore. Viserion beneficially owned 5.2% or 1,381,518 of Coinbase's Class A common stock at the time of the IPO, and beneficially owned more than 5% of Coinbase's outstanding stock.[28] Viserion had a vested interest and was financially motivated to take Coinbase public.

31.     Defendants in ¶¶ 25-30 are collectively related to herein as "Institutional Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Coinbase's False And/Or Misleading Registration Materials In Connection With Its IPO.**

32.     The Offering Materials were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the applicable statutory requirements and applicable SEC rules and regulations.

33.     Under applicable SEC rules and regulations, the registration materials were required to disclose known trends, events, or uncertainties that were having, and were reasonably likely to have, an impact on Coinbase's continuing operations.

---

[26] *Id.*
[27] *Id.*
[28] *Id.*

34.     The registration materials contained glowing reports of Coinbase's core product, its cryptocurrency trading platform, stating in relevant part:[29]

> We have developed a complementary suite of products and services that are designed to **meet the distinct needs** of our customers as they transact in the cryptoeconomy. Our customers – retail users, institutions, and ecosystem partners – come together on our platform to create a powerful flywheel of our business.
>
> Our platform and flywheel are **powered by a robust backend technology system** that enables us to develop, launch, and market scalable new products and services. Our technology platform includes the following elements:
>
> - ***15+ native blockhain integrations and counting***. We have developed custom technology and processes to directly integrate with over 15 blockchain protocols and efficiently support new protocols.
>
> - ***Advanced cybersecurity and cryptography technology***. We have pioneered industry-leading standards for managing private cryptographic keys and use sophisticated cybersecurity technologies such as multi-party computation to safeguard a wide range of crypto assets.
>
> - ***Proprietary crypto compliance infrastructure***. We have built bespoke transaction monitoring systems to analyze crypto asset transactions in real-time on the blockchain, allowing us to support new products and services.
>
> - ***Powerful product experiences***. Investments in our technology platforms give us the ability to create unique product experience for our customers that allow them to easily participate in technically complex parts of the cryptoeconomy.

[Underlining added; italics original.]

35.     Furthermore, the registration materials highlighted the strengths of Coinbase's platform under the "what sets us apart" section, stating in relevant part:[30]

> - ***We are a market leading brand exclusively focused on the cryptoeconomy***. Keeping pace with the breadth and depth of innovation in the cryptoeconomy requires focus. We have and remain solely focused on building technology to power the cryptoeconomy since 2012. Our focus allows us to nimbly adapt to quickly shifting trends and support the growth of the industry. As the cryptoeconomy grows, our competitive advantage grows.

---

[29] *Id.*
[30] *Id.*

CLASS ACTION COMPLAINT

- ***We have a trusted platform owning to our heritage of security and culture of regulatory compliance***. We are a financial technology provider that offers services to customers in over 100 countries, and we are proud to be one of the longest running crypto platforms where customers have not lost funds due to a security breach in the platform. We are also licensed to engage in money transmission and virtual currency business in almost all U.S. states and we continue to pursue licensing in select jurisdictions internationally.

- ***We have significant scale, securely storing over $90 billion in total assets***. We believe our market leading share of assets on our platform is a competitive advantage, and that we have a substantial opportunity to build on our customer relationships by growing with our customers and offering a broader suite of products and services.

- ***We have a robust technology platform that enables unique product experiences for our industry***. Our custom technology platform is built to deal with the real-time, global and 24/8/365 nature of crypto asset markets, enabling us to rapidly research, develop, and launch new products and features.

- ***We operate a marketplace with one of the deepest pools of liquidity and a network effect***. We have a deep pool of liquidity for exchanging a wide range of crypto assets, supported by a healthy mix of retail and institutional activity.

[Italics original.]

36.     The registration materials also emphasized the strength of Coinbase's financial condition and highlighted the strength of its liquidity and capital resources, stating in relevant part:

**We have grown quickly and in a capital-efficient manner since our founding**. For the years ended December 31, 2020 and December 31, 2019, we generated total revenue of $1.3 billion and $533.7 million, respectively, net income (loss) of $322.3 million and $(30.4) million, respectively, and Adjusted EBITDA of $527.4 million and $24.3 million, respectively.

Since our inception, we have financed our operations **primarily with cash flow from operating activities and net proceeds from the sale of convertible preferred stock**. As of December 31, 2020, we had cash and cash equivalents of $1.1 billion, exclusive of restricted cash and customer custodial funds.

Our cash flow from operating activities may materially fluctuate from period-to-period based on movement within our custodial funds due to customers liability. Since our customer custodial funds are included in cash and cash equivalents, any large fluctuations in the related liability will directly impact our cash flow from operating activities. **We believe our existing cash and cash equivalents will be sufficient to meet our working capital and capital expenditure needs for at least the next 12 months**.

CLASS ACTION COMPLAINT

[Emphasis added.]

37.     The registration materials filed with the SEC were false and misleading and contained material omissions by failing to disclose, that at the time of the IPO, (1) CoinBase's platform had fundamental weaknesses that caused it to be susceptible to network disruptions; (2) CoinBase had cashflow issues and required a substantial cash infusion; and (3) as a result of the foregoing, Defendant's glowing statements about the Company's business, operations, and prospections were materially misleading and/or lacked a reasonable basis.

38.     Defendants were required to disclose material information noted in ¶37 for three reasons. Firstly, SEC Regulation S-K, 17 C.F.R. § 229.303 (Item 303), required disclosure of: "any known trends . . ., events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity . . . decreasing in any material way"; "any known material trends, favorable or unfavorable, in the registrant's capital resources"; "any known trends or uncertainties that had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenue."  At the time of the IPO, Coinbase knew or should have known, that it had insufficient cash, and that the continued growth of the Coinbase platform exposed it to service-level technical issues that disrupted customer's ability to trade cryptocurrencies during high volatility, and as a result would impair Coinbase's ability to generate revenue through transaction fees.  The material undisclosed negative events and trends, could have and did materially and adversely affect Coinbase's financial state and rendered the disclosed results and trends in the Offering Materials misleading and not indicative of the Company's future operating results.

39.     Secondly, SEC Regulation S-K, 17 C.F.R. § 229.105 (Item 105), required disclosure of risk factors that are "material factors that make an investment in the registrant or offering speculative or risky."  The risk factors discussion "must be organized logically with relevant headings and each risk factor should be set forth under a subcaption that adequately describes the risk."  Item

105.  Coinbase's discussion of risk factors did not adequately describe the foreseeable risk posed by service-level technical disruptions on its platform and the foreseeable negative impact such technical issues would have or were already having on Coinbase's business and revenue.

40.  Thirdly, Defendants' failure to disclose Coinbase's liquidity issues, cash flow issues and its service-level technical disruption issues rendered its registration materials false and misleading because many references to known risks had already materialized at the time Coinbase made its filings, and these risks were referred to in a hypothetical "if," "might," or "could," even though they had already materialized at the time of the IPO.

41.  Despite the material omissions and fraudulent misrepresentations, Defendants plowed forward with the IPO and made available for resale up to 114,850,769 of Class A common stock to the public.

**B.   Events And Disclosures Following The Offering**

42.  On May 17, 2021, Coinbase undermined its own glowing reports in its IPO registration material when it announced that it was raising cash through the sale of $1.25 convertible senior notes.[31]  An article published on NASDAQ titled "Why Is Coinbase Stock Trending Lower," noted:[32]

> On Monday evening, Coinbase said that it plans to raise about $1.3 billion via a convertible bond sale, a move that could be dilutive to existing shareholders. **Investors were also likely surprised** by the timing of the issue, considering that Coinbase just went public in mid-April via a direct listing (which doesn't involve issuing new shares or raising capital), **signaling that it didn't require cash**. So the company's decision to issue bonds a little over a month later is likely **raising some questions**.

[Underlining added; italics original.]

43.  On the break of the news, Coinbase's stock fell. On the open of May 17, Coinbase stock was trading at around $250, and by May 18, it had closed at $239, a 4.4% loss in two trading days.

---

[31] Coinbase Global, Inc. Form 8-K (May 17, 2021).
[32] https://www.nasdaq.com/articles/why-is-coinbase-stock-trending-lower-2021-05-20

CLASS ACTION COMPLAINT

44.     To add to Coinbase's issues, on May 19, 2021, Coinbase revealed technical issues on its platforms, including "delays . . . due to network congestion."[33] These technical issues substantially impaired Coinbase's revenue since transaction fees were the main way Coinbase generated revenue, especially when cryptocurrencies were experiencing high volatility and volume, and such high volume and volatility were present during the relevant period.

45.     On the break of news of Coinbase's technical issues, Coinbase's stock fell. On the open of May 18, the stock was trading at around $238, and by May 19, it had closed at around $224, a 5.8% loss in just two trading days.

46.     The total decline from the opening price on the IPO date to May 19, 2021 was an astonishing 41% decrease.[34]

## CLASS ACTION ALLEGATIONS

47.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

48.     Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure 23, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Coinbase common stock pursuant to and/or traceable to the registration materials (the "Class"). Excluded from the Class are (1) Defendants, (2) present or former executive officers of Coinbase, directors of Coinbase, and members of their immediate families (as defined in 17 C.F.R. § 229.404 (Item 404) Instructions, (1)(a)(iii) and (1)(b)(ii)); (3) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (4) any entities in which Defendants have or had a controlling interest, or any affiliate of Coinbase.

49.     Class action is proper because "the class is so numerous that joiner of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). Coinbase stock was publicly offered on the NASDAQ on

---

[33] http://web.archive.org/web/20210519155224/https://status.coinbase.com/
[34] Coinbase's stock opened at $381 on April 14, 2021 and closed at $224 on May 19, 2021.

April 14, 2021 and has been actively traded since. As such, the exact number of Class members are unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery. Based upon information and belief, there are potentially hundreds or thousands of members in the putative Class. Record owners and other members of the Class may be identified from records maintained by Coinbase or its transfer agent.

50.     Class action is proper because "there are questions of law or fact common to the class," and such questions predominate over individualized questions affecting sole members of the Class. Fed. R. Civ. Pro. 23(a)(2). Common questions for the Class include:

(a) Whether Defendants' acts violated the applicable federal securities laws as alleged herein;

(b) Whether the registration materials omitted and/or misrepresented material facts about the business, operations, finances, and prospects of Coinbase; and

(c) To what extend the members of the Class have sustained damages and the proper measure of damages.

51.     Class action is proper because "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class. Fed. R. Civ. Pro. 23(a)(3). Plaintiff's claims are typical of the claims of the putative Class members, and he was similarly affected by the Defendants' uniform misconduct in violation of federal securities laws.

52.     Class action is proper because Plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). This is so because Plaintiff's interests not adverse to the Class and has retained counsel that is competent and has vast experience in securities class actions.

53.     A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to

effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### A.      First Cause Of Action: For Violations Of § 11 Of The Securities Act.

54.      Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

55.      This cause of action is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of Plaintiff and other members of the Class, against Defendant Coinbase and the Individual Defendants. § 11 is a strict liability cause of action that does not require to proof of fraud, as such, Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

56.      The registration materials were inaccurate and misleading, contained untrue statements of material facts and material omissions that were necessary to make statements made not misleading or untrue.

57.      Defendant Coinbase is an issuer of the securities purchased by Plaintiff and Class members and as such is strictly liable for material untrue statements and omissions in its registration materials.

58.      The Individual Defendants are named as being responsible because they (1) signed the registration statement; (2) were directors of or partners in the issuer at the time of filing; (3) were named in the registration statement as being or about to become a director, a person performing similar functions, or partner; (4) were persons whose profession gives authority to a statement made

by him, and who prepared or certified any report or valuation which was used in connection with the registration statement; or (5) were underwriters within the statutory definition under § 2(a)(11) of the Securities Act. The Individual Defendants are strictly liable to Plaintiff and to the Class for any materially inaccurate statements or omissions contained in the registration materials and each had a duty to reasonably investigate and establish reasonable ground for belief that the registration materials were not materially misleading.

59.     For reasons stated herein, Defendant Coinbase and the Individual Defendants violated, and/or controlled a person who violated, § 11 of the Securities Act.

60.     This claim was brought within the statute of limitations laid out in § 13 (15 U.S.C. § 77m) as it was brought within one year after the discovery of the untrue statements or omissions.

61.     Plaintiff and Class members are entitled to damages as calculated by § 11(e) from the Defendants and each of them jointly and severally.

**B.     Second Cause Of Action: For Violations Of § 12 Of The Securities Act.**

62.     Plaintiffs incorporates by reference all preceding paragraphs as if fully restated here.

63.     This cause of action is brought pursuant to § 12 of the Securities Act, 15 U.S.C. § 77l, on behalf of Plaintiff and Class members, against Defendant Coinbase and the Individual Defendants. § 12 is a strict liability cause of action that does not require proof of fraud, and as such, Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

64.     Defendant Coinbase and the Individual Defendants offered or sold Coinbase stock by means of a prospectus using instrumentalities of interstate commerce within the meaning of § 12(a)(2) to communicate with or induce investors, such as Plaintiff and Class members to purchase Coinbase's stock during the IPO and the relevant class period.

65.     The registration materials were inaccurate and misleading and contained untrue statements of material facts and material omissions that were necessary to make statements made not misleading or untrue. Furthermore, Defendant Coinbase and the Individual Defendants made these statements to solicit Plaintiff and Class members to buy Coinbase's stock.

66.     Defendant Coinbase and the Individual Defendants owed Plaintiff and Class members the duty to reasonably investigate statements contained in the registration materials to ensure that such statements were true and that there was no omission of material facts. Defendant Coinbase and the Individual Defendants breached this duty because had they done so, they would have known or reasonably discovered the material misstatements and omissions alleged herein.

67.     Plaintiff and Class members did not know, and in the exercise of reasonable care could not have known, of such material untruths or omissions contained in the registration materials.

68.     Because of the § 12(a)(2) violations by Defendant Coinbase and the Individual Defendants, Plaintiff and Class members suffered substantial losses in connection with purchases of Coinbase's stock. Plaintiff and Class members are entitled to rescind and recover the consideration paid for their Coinbase stock, and hereby tender their Coinbase shares to Defendants sued herein. Class members who have sold their Coinbase stock seek damages to the extent permitted by law.

69.     This claim was brought within the statute of limitations laid out in § 13 of the Securities Act as it was brought within one year after the discovery of the untrue statements or omissions.

**C.     Third Cause Of Action: For Violations Of § 15 Of The Securities Act.**

70.     Plaintiffs incorporates by reference all preceding paragraphs as if fully restated here.

71.     This cause of action is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiff and Class members, against the Individual Defendants and the Institutional Defendants. § 15 is a non-fraud cause of action that does not require to proof of fraud, as such, Plaintiff

does not assert that Defendants identified herein committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

72.     The Individual Defendants were controlling persons of Defendant Coinbase within the meaning of § 15 by reason of their stock ownership, agency, management positions, and/or directorships held. The Individual Defendants directly participated or authorized such participation in the preparation and filing of registration materials that were used in Coinbase's IPO.  As such, the Individual Defendants had power to individually and/or collectively control or influence the Defendant Coinbase and are controlling persons within the statutory definition.

73.     The Institutional Defendants had significant ability to influence the policies and actions of Defendant Coinbase through the control of Class B common stock which is entitled to twenty votes per stock, and such Class B common stock was convertible to Class A common stock at a 1:1 ratio.[35]  These Institutional Defendants were deeply intertwined with the decision-making process related to the IPO and had a vested financial interest in extracting the most value from the IPO.

74.     As control persons of Defendant Coinbase, the Individual Defendants and Institutional Defendants are jointly and severally liable pursuant to § 15 of the Securities Act with and to the same extent as Defendant Coinbase for its violations of § 11 and § 12 of the Securities Act.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, individually and on behalf of the Class, demands judgment as follows:

A.     Determining that the instant action may be maintained as a class action under Federal Rule of Civil Procedure 23 and certifying Plaintiff as the Class representative;

---

[35] Coinbase Global, Inc. Form 424(b)(4) (April 14, 2021).

CLASS ACTION COMPLAINT

B.  Requiring Defendants to pay compensatory damages jointly and severally in favor of Plaintiff and the Class for all damages sustained by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the Class members recission, disgorgement, and all other remedies in equity or in law pursuant to the Securities Act;

D.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interests, as well as their reasonable attorneys' fees with interest, expert fees, and other costs; and

E.  Awarding such other further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 10, 2021

**WEISSLAW LLP**

Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

**FEDERMAN & SHERWOOD**

William B. Federman, OBA #2853
10205 North Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com
(Pro Hac to be filed)

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT